

SW/AZ: USAO2014R00081

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

2016 JUN 21  PM 4:20

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| v. | * | CRIMINAL NO. MJG-15-0322 |
| | * | |
| HARRY CRAWFORD, | * | (Conspiracy to Commit Health Care |
| ELMA MYLES, | * | Fraud, 18 U.S.C. § 1349; Health Care |
| and | * | Fraud, 18 U.S.C. § 1347, Aggravated |
| MATTHEW HIGHTOWER | * | Identity Theft, 18 U.S.C.  § 1028A; |
| Defendants | * | Conspiracy to Defraud the United |
| | * | States, 18 U.S.C. § 371; Failure to File |
| | * | Tax Returns, 26 U.S.C. § 7203; Aiding |
| | * | & Abetting, 18 U.S.C. § 2; Forfeiture, |
| | * | 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853) |
| | * | |

*******

### THIRD SUPERSEDING INDICTMENT
(DEFENDANTS CRAWFORD, MYLES, AND HIGHTOWER –
HEALTH CARE FRAUD and IDENTITY THEFT)
(DEFENDANTS CRAWFORD AND MYLES - TAX)

### COUNT ONE
(Conspiracy to Commit Health Care Fraud)

The Grand Jury for the District of Maryland charges that:

At all times relevant:

1. Defendants **HARRY CRAWFORD ("CRAWFORD"), ELMA MYLES ("MYLES")**, and **MATTHEW HIGHTOWER ("HIGHTOWER")** were residents of Baltimore City, Maryland.

2. **CRAWFORD** owned and operated RX Resources and Solutions ("RXRS") located at 9633 Liberty Road, Suite M, Randallstown, Maryland. RXRS was a provider of durable medical equipment including hospital beds and wheelchairs and disposable medical supplies including adult incontinence products, diabetic supplies, and wound care items.

1

3. RXRS was incorporated in Maryland in 2003, and subsequently authorized by the Maryland Department of Health and Mental Hygiene ("DHMH") to provide durable medical equipment and disposable medical supplies. RXRS never employed more than approximately seven individuals at any one time.

4. **CRAWFORD** was the President and Chief Executive Officer ("CEO") of RXRS and in that capacity, he ordered inventory, hired and fired employees and, at times, delivered disposable medical supplies.

5. **MYLES** worked at RXRS. **MYLES** was responsible for, among other things, billing health care benefit programs for RXRS.

6. Beginning in or about early 2012, **HIGHTOWER** worked as a delivery driver for RXRS.

7. Neither **CRAWFORD** nor **MYLES** filed tax returns for calendar years 2010 through 2013.

8. RXRS was incorporated to provide covered disposable medical supplies and durable medical equipment to individual Medicaid recipients whose doctors had prescribed such supplies and equipment for them. RXRS would bill Medicaid or private insurance carriers for the items using patients' names and unique identification numbers.

9. RXRS regularly billed for individuals who did not receive the products billed. These patients included but are not limited to ASm, ASa, BS, EJ, EL, DJ, DMJ, GJ, IH, JM, MB, MS, RL, SC, and SE. Most of RXRS's business consisted of making claims for adult incontinence supplies (diapers) for these and other patients who did not receive either the product or the amount claimed.

10. Medicaid is a health care benefit program as defined under Title 18, United States Code, Section 24(b), that is, a public or private plan or contract plan, affecting commerce, under

2

which a medical benefit, item, or service is provided to individuals, and for which payment may be made under the plan or contract. Medicaid is a joint federal and state program that provides medical assistance for certain individuals and families with low income and resources. Many private insurance companies are also health care benefit programs and provide coverage for medical benefits, items and services.

11. RXRS would submit claims to Medicaid or other health benefit providers on paper or electronically. The claims were required to contain the following: the beneficiary's name and unique identification number; the name and unique provider identification number of the doctor who ordered the item or service; the item or service that was provided by the supplier and the quantity; the date of service; and the charge for the item or service. RXRS was required to maintain accurate records regarding the provision of any disposable medical supply or durable medical equipment.

### The Charge

12. No later than in or about 2010 for defendants **CRAWFORD** and **MYLES**, and beginning in or about May 2012 for defendant **HIGHTOWER**, and continuing through in or about May 2014, the exact dates being unknown to the Grand Jury, in the District of Maryland, the defendants,

**HARRY CRAWFORD,
ELMA MYLES,
and
MATTHEW HIGHTOWER,**

did willfully and knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, section 24(b), that is, Medicaid, and other health care benefit programs, and for obtaining, by means of materially false and

3

fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and service.

### Object of the Conspiracy and the Scheme to Defraud

13. It was the object of the conspiracy and scheme to defraud to obtain money from Medicaid and other health benefit programs by (1) billing for supplies never provided; (2) billing for amounts far in excess of the actual amounts delivered; and (3) billing for supplies that were unneeded and where no physician had prescribed the supplies.

### Manner and Means of the Conspiracy and the Scheme to Defraud

14. It was part of the conspiracy and scheme to defraud that the defendants, and others known and unknown to the Grand Jury, would and did receive and use personal identification information (hereinafter "PII"), including names, addresses, and unique identification numbers, in order for RXRS to submit false and fraudulent claims.

15. It was further part of the conspiracy and scheme to defraud that the defendants, and others known and unknown to the Grand Jury, caused RXRS to routinely submit claims to health care benefit programs to include Medicaid for disposable medical supplies to include adult incontinence items, diabetic supplies, and wound care items that were not delivered or received by the beneficiary.

16. It was further part of the conspiracy and scheme to defraud that the defendants, and others known and unknown to the Grand Jury, caused RXRS to routinely submit claims to health care benefit programs to include Medicaid for disposable medical supplies when the amount delivered to the beneficiaries was significantly less than the amounts stated in the claims.

17. It was further part of the conspiracy and scheme to defraud that the defendants, and others known and unknown to the Grand Jury, caused RXRS to routinely submit claims to

health care benefit programs to include Medicaid for disposable medical supplies, such as adult incontinence, diabetic supplies, and wound care items, when the supplies were delivered to beneficiaries who did not need the supplies and whose physicians had not prescribed the supplies, and even after the beneficiaries reported that they did not need or want the supplies.

18. It was further part of the conspiracy and scheme to defraud that **HIGHTOWER** would sign or cause someone else to sign delivery tickets when deliveries had not actually taken place or when the beneficiary did not receive the items so that the records of RXRS would falsely document the delivery. **HIGHTOWER** would provide the forged and fraudulent delivery tickets to RXRS as part of his duties and responsibilities.

19. It was further part of the conspiracy and scheme to defraud that the defendants personally profited from the scheme either through ownership or through salary paid from proceeds of the fraud scheme.

20. It was further part of the conspiracy and scheme to defraud that **CRAWFORD** and **MYLES** personally used the proceeds of the fraud directly from the accounts of RXRS and failed to report to the IRS and pay taxes on salary and other income earned from RXRS.

18 U.S.C. § 1349

## COUNT TWO
### (Health Care Fraud)

The Grand Jury for the District of Maryland further charges that:

1. The allegations of Paragraphs 1 through 11 and 13 through 20 of Count One are incorporated here.

2. No later than in or about 2010 for defendants **CRAWFORD** and **MYLES**, and beginning in or about May 2012 for defendant **HIGHTOWER**, and continuing through in or about May 2014, the exact dates being unknown to the Grand Jury, in the District of Maryland, the defendants,

**HARRY CRAWFORD,
ELMA MYLES,
and
MATTHEW HIGHTOWER,**

in connection with the delivery of and payment for health care benefits, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicaid and other health care benefit programs, affecting commerce, as defined by 18 U.S.C. § 24(b), and for obtaining, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, that is: the defendants caused the submission of claims to health care benefit programs that falsely and fraudulently sought payment for disposable medical supplies such as adult incontinence supplies, diabetic supplies and wound care, that were represented in claims as having been provided and needed by beneficiaries when, in fact, the supplies were not provided, was not delivered in the amounts billed, or was not medically necessary.

18 U.S.C. § 1347
18 U.S.C. § 2

6

## COUNT THREE
## (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. The allegations of Paragraphs 1 through 11 and 13 through 20 of Count One are incorporated here.

2. As early as in or about 2010 for defendants **CRAWFORD** and **MYLES**, and in or about May 2012 for defendant **HIGHTOWER**, and continuing through in or about May 2014, the exact dates being unknown to the Grand Jury, in the District of Maryland, the defendants,

**HARRY CRAWFORD,**
**ELMA MYLES,**
**and**
**MATTHEW HIGHTOWER,**

did, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), knowingly transfer, possess and use, without lawful authority, a means of identification of another person; to wit, the defendants used or caused to be used the actual name and unique insurance identification numbers of numerous beneficiaries, during and in relation to a violation of 18 U.S.C. § 1349 (Health Care Fraud Conspiracy) and 18 U.S.C. § 1347 (Health Care Fraud), as charged in Counts One and Two of this Third Superseding Indictment and incorporated here.

18 U.S.C. § 1028A(a)
18 U.S.C. § 2

## COUNT FOUR
### (Conspiracy to Defraud the United States)

The Grand Jury for the District of Maryland further charges that:

1. The allegations of Paragraphs 1 through 11 and 13 through 20 of Count One are incorporated here.

2. Except for the time period of approximately February 2009 through January 2010, **CRAWFORD** and **MYLES** were domestic partners who lived together at **CRAWFORD**'s home on Cedar Garden Road, Baltimore, Maryland. **CRAWFORD** and **MYLES** worked closely together at RXRS, and both were the managers/supervisor of all business activities at RXRS.

3. **CRAWFORD** and **MYLES** had control over the deposit and disbursement activity of RXRS business accounts.

4. From in or about 2010, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of this Third Superseding Indictment, in the District of Maryland and elsewhere, the defendants,

**HARRY CRAWFORD, and**
**ELMA MYLES,**

did knowingly and willfully conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States Department of Treasury by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service to ascertain, compute, assess, and collect revenue: to wit, federal income taxes.

8

## Purpose of the Conspiracy

5.  **CRAWFORD** and **MYLES** engaged in the conspiracy to enrich themselves and others by diverting business receipts and the taxable income generated by RXRS for **CRAWFORD** and **MYLES's** personal use.

## Manner and Means of the Conspiracy

6.  The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

   a.  To divert business receipts and the taxable income generated from RXRS for the personal use of **CRAWFORD** and **MYLES's** by, for example, paying personal bills and expenses, funding a hair salon, hosting lavish social events including for a small child, non-business travel to Las Vegas, Disney World and other locations, and purchasing extravagant goods and services.

   b.  By failing to keep accurate and adequate records of business income and expenses, such as general ledgers, balance sheets or income statements, for the purpose of frustrating the IRS in its lawful information gathering functions.

   c.  By commingling personal and business monies in five bank accounts in the name of RXRS at three different banks, **CRAWFORD** and **MYLES** would pay both business and personal expenses to hide and conceal the source and amount of money used to fund their personal lifestyle.

   d.  By failing to provide the necessary documents to a tax return preparer and to allot the necessary time for review and preparation, **CRAWFORD** and **MILES** consciously and willfully failed to abide by their legal obligations to timely file personal income tax returns.

   e.  At times, by failing to remit withholding taxes for RXRS employees and pay payroll taxes.

    f. By failing to file personal income tax returns for calendar years 2010 through 2013.

## Overt Acts

  7. In furtherance of the conspiracy and to achieve the objectives thereof, the defendants performed and caused to be performed at least one of the following overt acts, among others, in the District of Maryland and elsewhere:

    a. On or about January 14, 2010, **MYLES** provided an unfiled 2009 Form 1099 as evidence of $72,800 in salary from RXRS to an automobile dealer in order to obtain financing for her purchase of an Acura.

    b. In or about February 2010, **MYLES** caused the filing of a false 2009 Form 1040, U.S. Individual Income Tax Return, with the Internal Revenue Service. The material falsity included the representation that **MYLES'** only source of income was wages in the amount of $2,550 from non- RXRS sources, when in fact **MYLES** received money from RXRS and **CRAWFORD** including six payments totaling $8,146.46 in compensation payments from RXRS.

    c. In or about April 2010, **MYLES** and **CRAWFOD** authorized the use of RXRS revenue in the amounts of $2,250 and $1,400 to the Goddard School, a private school for **MYLES**'s granddaughter.

    d. On or about December 21, 2010, **CRAWFORD** wrote a check from the business account of RXRS to D.W. in the amount of $2,900 for "sex all night".

    e. On or about February 14, 2011, **CRAWFORD** wrote check number 5110 in the amount of $1,100 from RXRS business account 2685 at BOA in order to pay his personal mortgage with American Home Mortgage Servicing.

f. In or about March 2011, **CRAWFORD** purchased a Cadillac SRX from Carmax in Ellicott City, Maryland for $28,869.48 and, in applying for a loan there, stated he made salaries and gross monthly wages of $6,667.

g. On or about July 22, 2011, **MYLES's** daughter and a friend traveled to South Beach, Florida for a vacation paid for with **CRAWFORD's** debit card which was funded by RXRS revenue.

h. In or about November 2011, after a deposit was made by Medicaid of $30,944 into a RXRS business account at Bank of America, RXRS revenue was used to make numerous purchases from retail stores such as Nordstrom, Sephora, Lush, American Eagle, Prom Girl and Ransoms Boutique, Michael Kors, and Macys.

i. On or about January 13, 2012, check 1007 from BOA 2685 account was written to Hunting Hills apartment complex in the amount of $2,005 in order to pay the personal rental expenses of **MYLES's** daughter using RXRS revenue.

j. In or about March 2012, **CRAWFORD, MYLES** and three other individuals flew to Washington State on Alaska Airlines for personal reasons paid for with RXRS revenue.

k. On or about July 13, 2012, **CRAWFORD** withdrew $15,000 in cash from the RXRS account at Wells Fargo Bank in Catonsville, Maryland.

l. On or about August 2, 2012, **CRAWFORD** e-mailed a "2011 Financial Statement" for RXRS representing that RXRS gross profit was $199,936 and expenses included "Biller" for $52,000 and "Driver" for $36,000.

m. On or about November 1, 2012, a business account ending in account number 3166 at Wells Fargo was opened in the name of "Hair Couture" using the address of RXRS. Business receipts of RXRS were later deposited into the account for non-RXRS

business related purposes.

  n. **CRAWFORD** and **MYLES** planned, hosted, and paid for lavish parties, including a birthday party for **MYLES's** granddaughter using the business receipts of RXRS.

  o. On or about January 4, 2013, **CRAWFORD** wrote a check from the business accounts of RXRS to D.W. in the amount of $3,650 for "Disney."

  p. On or about April 1, 2013, **CRAWFORD, MYLES,** and two family members traveled to Disney World in Orlando, Florida for a personal trip paid for with RXRS revenue.

  q. In or about June 2013, **CRAWFORD** provided an undocumented personal loan in cash to D.W. using RXRS revenue.

  r. On or about September 26, 2013, a personal purchase was made for designer retail items from Gucci from the business account of RXRS.

  s. On or about February 4, 2014, **CRAWFORD** and **MYLES** possessed over $60,000 in cash at their home.

  t. On or about March 6, 2014, **CRAWFORD** signed a false 2009 Form 1040 U.S. Individual Income Tax Return, falsely reporting net profit of RXRS of $14,896 when, in 2009, he expended approximately $93,000 for personal items and services.

  u. On or about April 25, 2014, after learning about the federal investigation, **CRAWFORD** mailed a false 2009 Form 1040 to the IRS from Baltimore, Maryland, that was received by the IRS on or about April 29, 2014.

18 U.S.C. § 371

## COUNTS FIVE THROUGH EIGHT
(Failure to File Income Tax Return)

The Grand Jury for the District of Maryland further charges that:

On or about the dates set forth below, in the District of Maryland, the defendant,

### HARRY CRAWFORD,

a resident of Baltimore City, Maryland, had received gross income in excess of the minimum filing amount established by law, and by reason of such gross income was required by law, following the close of the calendar year noted below and on or before April 15 of the following year, to make an income tax return to the District Director of the Internal Revenue Service at Baltimore, Maryland, or to the Director, Internal Revenue Service Center, Mid-Atlantic Region, Philadelphia, Pennsylvania, stating specifically the items of gross income and any deductions and credits to which the defendant was entitled, and well knowing the foregoing, the defendant did knowingly and willfully fail, to make said income tax return.

| Count | Calendar Year Income was Earned | Date of Required Filing |
|---|---|---|
| 5 | 2010 | April 15, 2011 |
| 6 | 2011 | April 15, 2012 |
| 7 | 2012 | April 15, 2013 |
| 8 | 2013 | April 15, 2014 |

26 U.S.C. § 7203

## COUNTS NINE THROUGH TWELVE
(Failure to File Income Tax Return)

The Grand Jury for the District of Maryland further charges that:

On or about the calendar year set forth below, in the District of Maryland, the defendant,

### ELMA MYLES,

a resident of Baltimore City, Maryland, had received gross income in excess of the minimum filing amount established by law, and by reason of such gross income was required by law, following the close of the calendar year noted below and on or before April 15 of the following year, to make an income tax return to the District Director of the Internal Revenue Service at Baltimore, Maryland, or to the Director, IRS Center, Mid-Atlantic Region, Philadelphia, Pennsylvania, Internal Revenue Service stating specifically the items of gross income and any deductions and credits to which the defendant was entitled, and well knowing the foregoing, the defendant did knowingly willfully fail, to make said income tax return.

| Count | Calendar Year Income was Earned | Date of Required Filing |
|---|---|---|
| 9 | 2010 | April 15, 2011 |
| 10 | 2011 | April 15, 2012 |
| 11 | 2012 | April 15, 2013 |
| 12 | 2013 | April 15, 2014 |

26 U.S.C. § 7203

## FORFEITURE ALLEGATIONS

The Grand Jury for the District of Maryland further charges that:

1. As a result of the offenses alleged in Counts One and Two, the defendants,

**HARRY CRAWFORD,
ELMA MYLES,
and
MATTHEW HIGHTOWER,**

shall forfeit to the United States any and all property, real and personal, constituting or derived, directly or indirectly, from gross proceeds traceable to the offense, including, but not limited to: approximately $900,000 in cash.

2. If, as a result of any act or omission of the defendant, any such property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

18 U.S.C. § 982(a)(7)
21 U.S.C. § 853

*Rod J. Rosenstein* /sw
Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson
Date: June __, 2016

15