IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.  MJG-15-322 |
| | * | |
| MATTHEW HIGHTOWER | * | |
| | * | |
| _____ | * | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT HIGHTOWER'S MOTION FOR AQUITTAL

The United States of America submits this Response in Opposition to the Defendant's

Motion for Acquittal in the above-captioned case (ECF 310). For the reasons given below, the

motion should be denied.

**INTRODUCTION**

The Defendants make five arguments: First, that no property was obtained as a result of

the murder. Second, the Mr. Wutoh did not consent to the Defendant's murdering him. Third, that

the impossibility of posthumous consent invalidates the extortion charge. Fourth, that there was

no evidence of other debtors. Fifth, that the charges fail to satisfy the Commerce Clause. None of

these arguments provides a basis for a judgment of acquittal.

**STATEMENT OF FACTS[1]**

In the spring of 2013, the Defendant and Harry Crawford made loans to David Wutoh, who

promised them a fantastic rate of return.  Crawford was a longtime friend of Wutoh, and he

facilitated the loan from the Defendant.  When Wutoh failed to repay, the Defendant and Crawford

conspired together to send Wutoh many threatening messages to extort him into repayment. These

messages, sent over the course of the summer of 2013, included threats to physically harm and

---

[1] The facts of this case, already well familiar to the Court, are summarized briefly.

murder Wutoh if he did not repay.  In response, Wutoh paid Hightower back a portion of the money

he owed, but not the full amount.

Crawford ultimately demanded that Wutoh place Crawford in his will, and Wutoh told him

that he had. Wutoh also told Crawford that he had a $500,000 life insurance policy. Then, the

Defendant conspired with Crawford to murder David Wutoh, shooting him in the head, arm, and

leg as he slept on his ex-girlfriend's living room couch. The Defendant did so in the hopes that

Crawford would receive the money in the will, to show that the Defendant was not "green," and

could not be taken advantage of, and to receive a cut of Crawford's payment from the will.[2]

## ARGUMENT

### A.  Material Success Is Not a Requirement of 18 U.S.C.  § 1952.

The Defendant argues that, "no property was obtained on September 22, 2013, at the time

that Mr. Wutoh was killed."[3] ECF 322, 2.  In other words, the Defendant thought murdering Mr.

Wutoh would get him money from his will, but because the Defendant was mistaken, he should

be acquitted of the murder.  This is the impossibility defense the Court instructed against at trial.

The fact that the Defendant's scheme did not go precisely as planned does not preclude his

criminal liability. Ineffective criminals are as guilty as their more competent brethren. *See United*

*States v. Stevens*, 612 F.2d 1226 (10th Cir. 1979) ("While the parties did not accomplish a heroin

buy in Las Vegas, the telephone calls made by Deal to Childress were over acts attempting to

further the conspiracy within the meaning of the Travel Act and Stevens is chargeable with those

acts.").

The Defendant would have the Court read in a new requirement into 18 U.S.C. § 1952.

---

[2] As it turned out, Mr. Wutoh died insolvent, his life insurance policy had lapsed, and he had no will.

[3] Implicitly, the Defendant acknowledges that the pre-murder conduct had resulted in property being obtained earlier in the summer, when Wutoh had paid Crawford some initial installment after threats of death.

Nowhere does the law require that the crime of violence in furtherance of the extortion result in funds flowing to the Defendant. The law requires only that the crime of violence be committed to "to further" the unlawful activity.  Intent, not ultimate success, is the requirement of 18 U.S.C. § 1952.  The fact that Mr. Wutoh lacked a will is irrelevant, because the Defendant murdered him thinking that he did.

The Defendant also argues that there is no "factual basis" that Crawford's discussions with Andrea "Candy" Brown about Wutoh's will indicated any attempt by Crawford to collect on the will.  ECF 322, 2. This is precisely the issue the Government argued to the jury, and the Defendant vociferously argued against. Crawford's odd, unusual, and unprecedented inquiries to Ms. Brown shortly after Mr. Wutoh's murder – asking "three to four, five times" about Mr. Wutoh's will – indicated more than just a passing interest in the affairs of his deceased friend. Moreover, once Ms. Brown stated that Wutoh had no will and was insolvent, Crawford immediately began asking about "$15,000" he had loaned Wutoh.  Next, he introduced Ms. Brown to the Defendant. This exchange, combined with Crawford's earlier insistence on being included in Wutoh's will, provided the jury abundant evidence of Crawford's purpose: to collect on the will after the Defendant murdered Wutoh.

B.  **The Defendant Murdered David Wutoh**.

The Defendant also argues that "Mr. Wutoh did not consent to his own murder." ECF 322, 3. The Government agrees. The Defendant murdered Mr. Wutoh in cold blood.  Any arguments to the contrary are irrelevant and frivolous.

C.  **The Murder Was Committed to Further the Extortion Scheme by Collecting on the Victim's Will.**

The Defendant next argues that, "extortion requires the consent of the victim. Because Mr. Wutoh was killed, he could not consent to giving over any property." ECF 322, 4. This argument

misreads the law. 18 U.S.C. § 1952 has three parts: First, the Defendant must use a facility in

interstate commerce with intent to carry on an unlawful activity. 18 U.S.C. § 1952(a)(2). In this

case, all parties agree that the pre-murder activity in question is extortion as defined by both state

and federal law.   Second, the Defendant "thereafter performs or attempts to perform" an act to

"promote, manage, establish, carry on, or facilitate the promotion management, establishment, or

carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3)(A). Both parties agree that such an

act need no involve an interstate facility.   Once the Government has proved these two facts, the

Defendant faces a possible sentence of five years imprisonment. There is no material dispute that

the Defendant was properly found guilty of this offense.[4]

The third condition of Section 1952 triggers an increased sentence. If the Defendant

commits a crime of violence to further [the] unlawful activity" and death results, the Defendant

may be imprisoned for life.  18 U.S.C. § 1952(a)(3)(B).  The jury, via a special verdict sheet, found

that the Defendant had fulfilled all three requirements. The Defendant's argument now rests on the

mistaken belief that the debtor must "consent" after his murder in order for the conduct to fall

under the statute's ambit. ECF 322, 5. But that is wrong. The unlawful act of extortion does not

cease when the victim has given consent. It ceases when the property has been obtained.  Here, the

murder was committed in an attempt to obtain the property.

Extortion is defined under federal law as "the obtaining of property from another, with his

consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of

official right." Here, the murder was committed in order to "obtain" the property of the victim,

*after* his consent had been wrongfully obtained. The unlawful activity was not completed until the

property was obtained (or, in this case, that the Defendant learned that it was impossible to do so).

---

[4] The Defendant's rehashed jurisdictional argument is discussed briefly at the end of this Response.

The murder was therefore committed to "further" the unlawful activity, which was "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force." The extortion did not end the moment consent was given; nor did it end the moment the murder occurred; the "unlawful activity" would have been completed at the point property was obtained.[5]

Consider the following hypothetical: the Defendant and Crawford extorted the victim into giving them the key to a safety deposit box containing cash. But the bank had strict instructions to allow no one to open the box while the victim was alive. Growing increasingly frustrated, the Defendant murdered the victim so that he could use the key to open the box and obtain the cash. The "unlawful activity" of extortion would not be complete until the cash had been obtained. The murder was done "to further" the unlawful activity, because extortion is not just the obtaining of consent; it also requires at least an attempt to obtain property. The same was true here: the Defendant killed David Wutoh so that he and his co-conspirator could obtain property from Wutoh, where consent had been wrongfully secured. They had gotten into his will, and then committed the murder to obtain the property.

Even assuming that consent had to be "induced" by the murder, the probating of a last will and testament qualifies as "consent." A will embodies the final wishes of the deceased, and probating such a document enters those wishes (and his consent to the disposition of property) into force. *See, e.g.*, *Proesel v. United States*, 1977 U.S. Dist. LEXIS 13545, * 11 (N.D. Ill. 1978) (discussing a testators "apparent and to-now uncontroverted consent, as indicated in her last will and testament..."); Hornder, *I Consented to Do What?: Posthumous Children and the Consent to Parent After Death*, 33 S. Ill. U. L. J. 157, 166 (2008) (discussing state statues "governing inheritance rights and posthumous consent."). A last will and testament is just that – the final

---

[5] Or, in this case, when the Defendant determined that the scheme would not be effectuated and he and Crawford gave up.

volitional act of a person after their death.

D. **The Defendant Was a Loan Shark.**

The Defendant next argues that Government "did not show that anyone else . . . owed money to the defendant."  That is incorrect. The Government introduced evidence of additional debtors. Exhibit 22 consisted of a call from Matthew Hightower to Davon Carter on May 28, 2013.[6] In that call, Hightower began by describing how "I loaned my boss and them like fifteen, you know, stacks supposed to give me twenty stacks too. You know what I'm saying, like . . . I'm trying to like get into some real shit yo, and I'm like I ain't got times to be playing those games, yo." Here, the Defendant was conveying his frustration regarding the fact that the Victim had not paid him back.

Carter responded: "Yo, you gotta sit her down and to her, you like…" The Defendant responded: "Nah, nah, stop come on you she's green, she not from the states, she don't understand *how I step or nothing I do*."  In other words, Immediately after discussing the exorbitant debt owed by the victim, Hightower described how a romantic interest of his did not understand what he did for a living – *i.e.*, loan sharking. Carter then stated: "Yeah, hey this is what you do. How about this, did you do this yet? Take her with you for a whole week, every day for a whole week take her with you. And let her see what the fuck you doing all fucking week long and while you're doing it, you explain to her like this is how the fuck we eating man."  Hightower responded: "[S]he don't have to ride with me; she know what I do."

The Government emphasized this exchange in closing argument and rebuttal to show that the defendant was "loan sharking, extorting, loaning money, and charging high rates of interest to get that money returned." In the Defendant and his friend's own words, he was out "all fucking

---

[6] The full transcript appears at Attachment A.

week long," engaging in extortion. In response, Defense counsel argued that the call was referring

to the Defendant's catering side-business.  In rebuttal, the Government argued that the Defendant

wasn't talking about his skills passing trays of tuna teriyaki. The jury clearly found extortion had

occurred, and it had evidence presented to it of other victims. The Defendant was not out "all

fucking week long," extorting a single victim.

The Defendant also committed the murder to maintain his reputation, in regards to Davon

Carter, his other debtors, and with respect to his co-defendant, Harry Crawford. The Defendant

stated to Carter that he was concerned that Crawford and Wutoh were "trying to do me like

[Empire]," a movie where an individual makes a large call cash loan and then hunts the debtor

down and kills him when he fails to pay the loan back.  The Defendant murdered Wutoh in part to

maintain his reputation vis-à-vis his co-defendant, Crawford, in addition to Carter and others.

Indeed, the Defendant's need to make Crawford understand the risks he faced were high on his

mind. After the murder, Carter stated: "Man, tell your boss he owe that. That was on you, you gave

your word, so you owe god damnit give me at least half of that shit yo fucked on."  In response,

Hightower stated "Yeah, well he trying to get me, he was talking yesterday, he trying to get me to

go into this wholesale pharmacy business with him." In other words, Crawford acknowledged that

he was on the hook for the money, because – as indicated in earlier calls – Crawford had "cosigned"

the loan.

The Defendant had a particular interest in keeping his reputation up with his co-conspirator

Crawford, because the Defendant was not in Wutoh's will, but the Defendant thought Crawford

was. Therefore, the Defendant needed Crawford to come through and pay him for his part of the

scheme to succeed. Otherwise, he would be committing a murder and not getting any money for

it.  Hightower's reputation vis-à-vis his co-conspirator, Crawford, was thus also a critical part of

the extortion scheme.

E. **There Is Federal Jurisdiction Over Count 2.**

Finally, the Defendant argues that there is no federal jurisdiction for Count 2. This Court explicitly rejected these legal arguments prior to trial. ECF 231, 11. It should continue to do so now.

## CONCLUSION

For the reasons given above, this Court should deny each and every of the Defendant's motions.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney

By:    _____/s/_____
        Aaron S.J. Zelinsky
        Judson T. Mihok
        Assistant United States Attorneys


        36 S. Charles Street, 4th Floor
        Baltimore, Maryland 21201
        (410) 209-4800

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of November 2016, a copy of the foregoing

Government's Response to Defendant's Motion was electronically filed with notice to all counsel

of record:

＿＿＿＿＿＿/s/＿＿＿＿＿＿＿
Aaron S.J. Zelinsky
Assistant United States Attorney